Elmira City Realty Corporation v. Commissioner.
Elmira City Realty Corp. v. Commissioner
Docket No. 56110.
United States Tax Court
T.C. Memo 1957-53; 1957 Tax Ct. Memo LEXIS 191; 16 T.C.M. (CCH) 235; T.C.M. (RIA) 57053; March 29, 1957
*191 Held, that petitioner is entitled to a deduction of $5,224.10 in the year 1950 for a partially worthless debt. Held, further, that petitioner is not entitled to a deduction of $988.70 in the year 1951, on the ground that the remaining indebtedness of the same debtor had then become worthless. Wilfrid E. Rhodes, Esq., for the petitioner. Clarence P. Brazill, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The respondent determined deficiencies in petitioner's income taxes for the years 1950 and 1951 in the respective amounts of $623.62 and $903.81. The issues for decision are whether petitioner is entitled to deductions for bad debts: (1) A deduction for the year 1950 in the amount of $5,224.10, representing an alleged uncollectible promissory note of Richard S. Heller *192 in said amount; and (2) a deduction for the year 1951 in the amount of $988.70, representing an alleged uncollectible balance due on an open account with the same debtor. Findings of Fact Some of the facts have been stipulated. The stipulation, together with the exhibits thereto attached, is incorporated herein by reference. The petitioner, Elmira City Realty Corporation, is a corporation organized under the laws of the State of New York. It filed its income tax returns for each of the years involved with the then collector of internal revenue for the twenty-eighth district of New York, at Buffalo. The petitioner's business, at all times material, was that of owning and operating an office building in Elmira, New York, and of renting offices therein to tenants. The building was old, having been built in about 1890. It was constructed with wood joists and without any steel; and many of the floors were in a creaky condition. Petitioner found it difficult to obtain tenants. Many of the available offices were vacant. One of petitioner's tenants was a lawyer, named Richard S. Heller, who had occupied space in the building since shortly prior to 1936. The amounts of rent charged *193 him, during the years 1936 through 1948 ranged from $25 to $35 per month, plus additional charges for electricity. Heller, however, had only a small law practice; and his income was not sufficiently remunerative to enable him to keep up payment of said charges. The only payments made by him prior to 1948 were: $99 in 1936; $205 in 1937; $469.52 in 1938; nothing in the years 1939 through 1942; $200 in 1943; and nothing in the years 1944 through 1947. As of February 1, 1948, the unpaid balance of his account was $5,224.10. Repeated efforts of petitioner to obtain settlement of the account were unavailing. The petitioner kept its accounts on an accrual basis. All of the amounts which it charged Heller for rent were accrued by it as income on its books and records; and these amounts also were included by it in the gross income reported on its Federal income tax returns. On about February 1, 1948, petitioner decided that positive action should be taken with regard to the account; and one of its officers discussed the matter with Heller. The latter then stated, as he had done before, that he had no assets which could be realized upon for payment; but he informed petitioner that his wife *194 was the daughter of a judge who had substantial financial resources, and that he would arrange to obtain assurances from his father-in-law that the account would be paid. Shortly thereafter, Heller further informed petitioner that such assurances from his father-in-law had been obtained. Petitioner, after receiving the above information, caused an independent investigation to be made of Heller's credit; and this confirmed the truth of the representations which had been made. It believed, however, that Heller's statements concerning the assurances of his father-in-law were bona fide, and that, with patience, collection might ultimately be obtained from such source. Petitioner concluded, therefore, that the best course of action for it to follow would be not to evict Heller from the building, for this would only increase its building vacancies and possibly jeopardize further collection, but rather to have Heller execute a promissory note in the amount of the unpaid balance, so as to provide a definite agreement regarding the amount owing on the long-pending running account; and then to start a new open account for future rentals, which it hoped Heller might be able to keep currently *195 in balance. Heller agreed to this plan; stated that he was making arrangements for an associate to join him in his law practice; and that he would attempt to satisfy his obligations. Under date of February 1, 1948, Heller did execute a promissory note, made payable to petitioner on demand, in said amount of $5,224.10 with interest at 1 per cent per annum. Petitioner, at the same time, provided Heller with certain additional space in its building, for the purpose of accommodating the new law associate; and it increased the amount of Heller's rent to $65 per month, plus charges for electricity. Also, as of February 1, 1948, petitioner closed the existing account with a notation to the effect that the balance had become evidenced by a promissory note; and it opened a new sheet for Heller in its ledger, in which it made entries for all subsequent rent charges, not evidenced by the note. During the next 2 years, Heller made payments on this new account, in the amounts of $130 for 1948 and $395 for 1949. In the Spring of 1950, Heller's father-in-law died, without having paid anything on the promissory note; and he left a will, under which no bequests were made either to Heller or to *196 his wife. Later in 1950, however, the wife did receive some small distributions from the estate, as the result of a proceeding instituted for construction of the will; and, from these, payments were made to petitioner in the amounts of $700 in June 1950, and $300 in November 1950. These were credited to the new open account. In the latter part of the year 1950, petitioner again made a diligent effort to collect the amounts due. Heller however said, as he had previously, that he had no liquid assets; and that the house which he occupied was owned with his wife under a tenancy by the entirety, and was subject to a mortgage of $8,000. Heller, by this time, was about 45 years of age and had been practicing law for about 15 years. Petitioner concluded, by reason of these facts coupled with the death of the father-in-law upon whose assurances it had been relying for payment of the promissory note, that the note had become worthless and uncollectible; and it further concluded that any effort on its part to collect the same through legal proceedings would be futile. Accordingly, on its income tax return for the year 1950, it deducted the amount due on the note in the sum of $5,224.10, as *197 a bad debt. As regards the new open account of Heller, which at the end of the year 1950 showed an unpaid balance of $523.45, petitioner did not in 1950 charge this off as worthless. Heller still expressed willingness to make such payments as he could; and petitioner, believing that it was losing nothing by allowing him to occupy space in its largely vacant building, permitted him to remain as a tenant. In February 1951, Heller did make a payment of $175; and, in September 1951, he made another payment of $130. But, by the end of said year, the unpaid balance due on this account had increased to $988.70. All of the rent charges entered in the account, like those in the prior account which had been included in the abovementioned promissory note, were accrued by petitioner as income and were reported by it on its income tax return, as gross income. At the end of the year 1951, petitioner concluded that said amount of $988.70, owing on the new open account, was uncollectible; and on its income tax return for the year 1951, it deducted said amount as a bad debt. It, however, made no charge-off of the same in the account; and, during the years 1952 through 1956, the account remained *198 open, and charges for rent at the rate of $65 per month were made to Heller who continued to be a tenant. During these same years, Heller made no payments of rent until March 6, 1956. On and after said date, he did make a number of payments, totaling $1,300, on account of the balance due which then exceeded $5,300. As of the end of the year 1950 the portion of Heller's indebtedness which was evidenced by the above-mentioned promissory note, in the amount of $5,224.10 exclusive of interest, was worthless and uncollectible. As of the end of the year 1951, the balance of Heller's indebtedness which was evidenced by the new open account, in the amount of $988.70, was not worthless and uncollectible. Opinion Section 23 of the Internal Revenue Code (1939) provides, so far as here material, that, in computing net income, there shall be allowed as deductions: "(k) Bad Debts. - "(1) General Rule. - Debts which become worthless within the taxable year; * * * and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * *" We have heretofore recognized *199 that, in the allowance of partial bad debt deductions, the above section implies that the Commissioner has a certain amount of discretion. H. W. Findley, 25 T.C. 311, affirmed - Fed. (2d) - (C.A. 3). But such discretion is not unlimited. The applicable Treasury Regulations provide, among other things (Regs. 111, section 29.23 (k)-1(b)): "Where the surrounding circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment, a showing of these facts will be sufficient evidence of the worthlessness of the debt for the purpose of deduction. * * *" Thus, whether a debt actually has become worthless in whole or in part is a question of fact to be determined from a consideration of all the pertinent surrounding circumstances. It is our opinion, based on consideration and analysis of all the evidence, that the portion of Heller's indebtedness which was evidenced by his promissory note, in the amount of $5,224.10, should be allowed deduction in the year 1950, as a partial bad debt. Viewing the situation as it existed as of the close of the year *200 1950, as we believe we should, it seems entirely reasonable to us that petitioner's officers should then have concluded that this segregate portion of the debt had become uncollectible and worthless. Said portion of the debt represented the balance, as of February 1, 1948, in an account which had theretofore remained open for more than 12 years; on which only relatively small payments had been made; and which had then been converted into a note obligation, with a view to giving the debtor a fresh start toward meeting his subsequent rent obligations. Heller, in 1950, was approximately 45 years of age, so that he could not fairly be regarded as a young lawyer who was just getting underway in his law practice. He had then been practicing for more than 15 years, and yet had no assets that could be realized upon through legal proceedings. His father-in-law, upon whom petitioner had relied as the principal source for payment, had died early in 1950; and the relatively small distributions from his estate, which Heller's wife had obtained, were not recurring items. Petitioner had hoped, reasonably we believe, that by applying these amounts and all subsequent payments as credits to the new *201 account, Heller might obtain psychological help which would permit him to keep this new account currently in balance; but such hope was not realized. Certainly, there is nothing in the applicable statutes or regulations which requires a taxpayer to refrain from charging off a debt which he honestly and reasonably believes to be uncollectible, merely because the debtor is still living and might sometime and in some manner find himself able to pay. Rather, as the Supreme Court said in United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, "The taxing act does not require the taxpayer to be an incorrigible optimist." However, as regards the balance of Heller's indebtedness which was evidenced by the new open account, and which as of December 31, 1951, was in the amount of $988.70, it is our opinion that this should not be allowed as a bad debt deduction for the year 1951. Such amount was relatively small; and payments thereon actually were made by Heller in all of the years 1948, 1949, 1950 and 1951. Also the facts that, subsequent to 1951, petitioner continued to retain Heller as a tenant, continued to keep the account open without making any charge-off entry, and *202 continued to make entries therein for rents of the years 1952 to 1956, all indicate that petitioner did not truly intend to abandon this portion of the debt as an asset, in 1951. We find no identifiable event in 1951 which warrants a conclusion that such indebtedness was worthless as of the close of said year. Decision will be entered under Rule 50.